838 F.2d 164
 127 L.R.R.M. (BNA) 2447, 56 USLW 2451,
108 Lab.Cas. P 10,284
 COLFOR INC., Petitioner, Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner,
International Union United Automobile, Aerospace &
Agricultural Implements Workers of America and its
Local No. 2148, Intervenor.
 Nos. 87-5200, 87-5293.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 11, 1987.
Decided Jan. 29, 1988.
Rehearing Denied March 31, 1988.
 
 J. Howard Daniel, argued, Haynsworth, Baldwin, Miles, Johnson, Greaves and Edwards, Greenville, S.C., Lilli K. Lindbeck, for Colfor, Inc.
 Betty Grdina, argued, Bobulsky, Gervelis & Grdina, Ashtabula, Ohio, Jordan Rossen, Intern. Union UAW, Detroit, Mich., Betsey Engel, for intervenor.
 Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., Howard E. Perlstein, Harriet Lipkin, Julie Broido, argued, Frederick Calatrello, Director Region 8, NLRB, Cleveland, Ohio, for N.L.R.B.
 Before MARTIN, MILBURN and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Colfor, Inc., petitions for review of a decision of the National Labor Relations Board. The Board found that Colfor violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(1) and (5), by refusing to bargain with Local Union No. 2148 of the International Union, United Automobile, Aerospace and Agricultural Implements Workers of America, because of the presence of one of the union's bargaining committee members, and by refusing to resume negotiations with the union because of an alleged bargaining impasse. 282 N.L.R.B. No. 160 (February 2, 1987). The Board seeks enforcement of its order. Because we believe that the Board's decision is supported by substantial evidence and that the Board properly exercised its remedial authority, we grant enforcement of the Board's order.
 
 
 2
 This appeal represents another episode in an on-going struggle between a union and an obstinate employer. On March 22, 1979, the union won a Board-supervised election by a vote of 66 to 52, and, about a year later, the Board certified the union as the exclusive bargaining agent of Colfor's employees. In order to challenge this certification, however, Colfor refused to bargain with the union. The Board then found that Colfor violated sections 8(a)(1) and (5) of the Act, and it ordered Colfor to bargain with the union. The Board's order, which provided that the union's initial year of certification would begin on the date Colfor commenced bargaining in good faith, was enforced by this court. 678 F.2d 655 (6th Cir.1982).
 
 
 3
 On July 29, 1982, the union renewed its request that Colfor begin bargaining. When Colfor failed to respond, the Board informed the company that it was considering initiating contempt proceedings. Less than a month later, on November 1, 1982, Colfor responded to the union's request for information, and it invited the union to begin contract negotiations.
 
 
 4
 On February 9, 1983, the union informed Colfor that the employees had elected a bargaining committee consisting of four employees, including Clifford Logan. The parties first met on March 18. In May, however, after eleven more negotiating sessions, Colfor terminated Logan for failing to report for work on three consecutive days. On May 25, at the first bargaining session following Logan's dismissal, Colfor told the union that the company would not negotiate in Logan's presence because it would not discuss confidential matters in the presence of a non-employee. Colfor was willing to discuss Logan's dismissal, but the company refused to discuss any contract issues.
 
 
 5
 In response, the union filed an unfair labor practice charge, alleging that Colfor's refusal to bargain in Logan's presence was unlawful. On July 12, 1983, the Board issued a complaint and a notice of hearing. The next day, Colfor notified the union that it was willing to resume contract negotiations despite Logan's presence. The parties met again two weeks later, and Colfor never renewed its objection to Logan's attendance at bargaining sessions.
 
 
 6
 The progress of contract negotiations reached a head at a bargaining session held on October 25, 1983. At the commencement of that session, at least fifteen issues remained unresolved. During that meeting, however, the union either withdrew its demands or accepted Colfor's offers on all issues except two: the duration of the contract and Logan's employment status. With respect to those two issues, though, the union modified its initial position: it reduced its contract-length demand from three years to six months, and it offered to arbitrate the dispute over Logan's discharge rather than insist on his reinstatement. Colfor responded that it would accept a four-month contract, provided Logan's case was not submitted to arbitration. When the union's negotiator said he could not forego arbitration without consulting Logan and his own superiors, Colfor retreated to its original demand for a two-month contract. The union's negotiator responded, "So it looks like we're at impasse. I guess we'll have to meet again." The parties' respective representatives concluded the session by agreeing to schedule another meeting.
 
 
 7
 That meeting never took place. Although the negotiators had agreed to resume talks on November 4, Colfor officials decided, at a private meeting held on November 3, that they "were in agreement with the Union's assessment of negotiations, that impasse existed on [October 25]." About two hours before the November 4 meeting was scheduled to begin, Colfor conveyed its decision to the union. Colfor's attorney told the union's negotiator that there was no meaningful purpose in continuing the negotiations, that the company accepted the union's position that the parties were at impasse, and that Colfor had no intention of meeting with the union in the future.
 
 
 8
 On November 15, 1983, the union offered in writing to schedule another negotiating session. Colfor did not respond. In March 1984, after the union repeated its request, Colfor replied that its position remained unchanged.
 
 
 9
 Based on the foregoing facts, an administrative law judge concluded that Colfor violated sections 8(a)(1) and (5) on two occasions: once by temporarily refusing to bargain when Logan was present at the negotiations, and again by refusing to bargain after November 3, 1983, because the parties had purportedly reached impasse. In order to remedy the disrupted bargaining, the administrative law judge recommended that the union's initial certification year be extended for one full year. The Board affirmed these conclusions, but it modified the proposed remedy. The Board ordered that the union's certification year be extended for six months.
 
 
 10
 In its petition for review, Colfor first contends that the Board erred in finding that the company was not justified in refusing to conduct substantive contract negotiations in Logan's presence. The Board specifically found "no evidence indicating that Logan's presence at the bargaining table would have impaired the bargaining relatiorship," and it declined to "find the presence of a former employee at the bargaining table to be the type of 'unusual factor' " which justifies objecting to the employees' selection of a bargaining agent under Standard Oil Co., 137 N.L.R.B. 690 (1962), enfd., 322 F.2d 40 (6th Cir.1963). Colfor disputes these findings. The company argues that the presence at the bargaining table of an employee who had been terminated very recently constitutes an "unusual factor" or "exceptional circumstance" because the employee would have a conflict of interest. Colfor maintains that Logan's presence would undermine productive, good-faith bargaining because he would be preoccupied with his own individual employment status and would not fully appreciate proposals which may be in the other employees' best interests. As "persuasive evidence" of this "potentially volatile situation," Colfor notes that, when negotiations broke down in November 1983, Logan's employment status was one of only two outstanding issues preventing a contract.
 
 
 11
 We are not persuaded. We are not to disturb the Board's factual findings if they are supported by substantial evidence. 29 U.S.C. Sec. 160(a). Clearly, the challenged findings are amply supported by the evidence in the record. It is not unusual, and certainly not exceptional, for an employee who is a member of the bargaining committee to have interests which do not perfectly align with those of the other employees. It is for the employees, not the employer, to determine whether their elected negotiators satisfactorily represent their mutual interests and will not compromise those priorities for the sake of individual concerns. Significantly, one day after being notified that the Board had issued a complaint, Colfor notified the union that it was willing to resume negotiations despite Logan's presence. Colfor claims that it changed its position merely because Logan's termination was no longer so recent as to pose a threat to productive negotiations; we believe this immediate response suggests that Colfor appreciated the weakness of its claim.
 
 
 12
 Colfor next challenges the Board's finding with respect to impasse. The Board found that a legitimate bargaining impasse did not exist on November 4, 1983, because "there was never a contemporaneous understanding of the parties that they were at a permanent impasse." The Board relied on Patrick & Co., 248 N.L.R.B. 390 (1980), enforced mem., 644 F.2d 889 (9th Cir.1981), as support for its finding. Colfor claims that Patrick & Co. does not support the Board's finding, and the company argues that the application of the five-factor test established in Taft Broadcasting Co., 163 N.L.R.B. 475 (1967), enforced sub nom. American Federation of Television and Radio Artists, Kansas City Local v. NLRB, 395 F.2d 622 (D.C.Cir.1968), necessarily yields the conclusion that the parties had reached impasse in November 1983.
 
 
 13
 Again, we are not persuaded. We believe that, under both Patrick & Co. and Taft Broadcasting, there is substantial evidence to support the Board's no-impasse finding. In Patrick & Co., the Board stated that, for an impasse to be found, the parties must have reached "that point of time in negotiations when the parties are warranted in assuming that further bargaining would be futile." 248 N.L.R.B. at 393. In Taft Broadcasting, the court approved a similar standard; to be at impasse, there must be "no realistic possibilty that continuation of discussion at the time [would be] fruitful." 395 F.2d at 628. The great progress made at the final bargaining session, held on October 25, strongly supports the conclusion that further negotiations would not have been futile. Indeed, if ten of twelve outstanding issues could be resolved in one bargaining session, it is obvious that a continuation of discussion could possibly be "fruitful," especially where, as here, the parties are relatively close to resolving the remaining two issues.
 
 
 14
 Colfor also contests the Board's remedial order. As mentioned earlier, the Board extended the union's certication year by six months. The Board concluded that a six-month extension was appropriate under the circumstances and was necessary to provide "a reasonable period of time in which the Union and [the company] can resume negotiations and bargain for a contract without unduly saddling the employees with a bargaining representative which they may no longer wish to have represent them." Moreover, the Board reasoned, this remedy accommodates the policy embedded in the Act by fostering the continued resolution of the parties' differences through the collective-bargaining process. Colfor argues that, because the alleged violations only caused a two month cessation in bargaining, the Board erred by extending the certification year for a significantly-longer period of time.
 
 
 15
 Colfor's argument is without merit. The Board's remedial authority is "a broad discretionary one, subject to limited judicial review," Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964), and, as the Board recognized, the certification-year extension need not be the product of a simple arithmetic calculation. See Glomac Plastics, Inc., 234 N.L.R.B. 1309 (1978), enf'd, 592 F.2d 94 (2d Cir.1979). Therefore, we may only disturb the Board's order if we find that it constitutes an abuse of discretion. We believe that the six-month extension was clearly within the Board's discretionary authority and was the correct remedy under the circumstances. Six months will afford the union the opportunity to resurrect the bargaining process, a process unlawfully disrupted by Colfor, but this extension will only temporarily impose upon the employees a representative which they may no longer want.
 
 
 16
 Colfor's final objection to the Board's decision is similarly without merit. In the proceedings before the Board, Colfor moved for a new trial before a new administrative law judge, asserting that the administrative law judge's decision evidenced bias and prejudice. The Board rejected the contention of bias and prejudice upon the part of the administrative law judge. Colfor renews this argument here, emphasizing the administrative law judge's "unnecessarily disparaging descriptions of Colfor's actions" and his "emotional" and "vituperative" discussion of the impasse issue.
 
 
 17
 Colfor's claim is baseless. A party attacking a judge's impartiality must demonstrate that the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Here, Colfor produced no evidence that the administrative law judge based his decision on anything other than the evidence contained in the record. Citing the administrative law judge's strong language is certainly not sufficient. The tone of the administrative law judge's opinion merely reflects his frustration with Colfor's protracted efforts to undermine the spirit of collective bargaining and defeat the union.
 
 
 18
 We can appreciate this frustration. This union was first elected in 1979, but Colfor and the union have yet to consummate one collective-bargaining agreement. Colfor characterizes its conduct as the actions of a company operating in a declining industry negotiating with a weak union. The company claims that it is merely doing that which the labor law permits it to do: adopt a strong bargaining position and stubbornly cling to it. That statement is true in theory, but it does not fully comport with the facts. Granted, under our law, an employer cannot be compelled to yield to union demands. But an employer may not exploit the recent termination of an employee who has been chosen to represent fellow employees in the negotiating process as grounds for refusing to continue contract negotiations. Similarly, an employer may not seize upon the inartful use of the word "impasse" by the union's negotiator in order to break off negotiations when an agreement is imminent.
 
 
 19
 In short, an employer must play by all the rules designed by Congress and the courts to produce industrial harmony. Having violated the Act on two occasions, Colfor must resume good-faith bargaining with the union for six months.
 
 
 20
 Accordingly, Colfor's petition for review is denied, and the Board's application for enforcement of its order is granted.